## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:23-mj-32 |
| JAMES GORDON MEEK | |
| *Defendant*. | |

### UNITED STATES' MOTION FOR REVOCATION OF RELEASE ORDER

The United States of America respectfully moves the Court to revoke the February 1, 2023, order releasing the defendant on conditions of pretrial release. Because the defendant has a troubling and extensive pattern of trafficking child pornography and engaging with minors online—including pressuring a minor to produce and send sexually explicit images of herself, and posing as a minor to engage in sexual discussions with other minors—the defendant cannot overcome the presumption that no conditions of release can ensure the safety of the community.

### BACKGROUND

On January 31, 2023, the Honorable Lindsey R. Vaala signed a complaint and arrest warrant charging James Gordon Meek with one count of transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1). The complaint affidavit also detailed Meek's involvement in the distribution and receipt of child pornography, including images and videos depicting the sexual abuse of infants and prepubescent children. *See* Ex. A (Compl. Aff.). Moreover, the affidavit detailed the defendant's online engagements and attempted engagements with minors across numerous internet platforms, including pretending to be a young girl. Law enforcement located nude images of a minor and conversations between her and the defendant in which the defendant

manipulated the minor based on her affection for a public figure. The minor stated in an interview that the defendant had pressured her to create and send him images that would constitute child sexual abuse material ("CSAM").

The defendant was arrested on January 31, 2023. He made his initial appearance before Judge Vaala on February 1, 2023, at which time the court conducted preliminary and detention hearings. During the hearing, the government admitted the complaint affidavit into evidence, and the testifying agent adopted its contents as her testimony. Acknowledging it was a "close call," the court ordered the defendant released pending trial under conditions. ECF No. 16. The government notified the court of its intent to seek district court review, pursuant to 18 U.S.C. § 3145(a)(1).

## **ARGUMENT**

### A.    **The Court has authority to revoke the Order of Release, and a rebuttable presumption of detention exists in this matter.**

The government may seek de novo review by a district court of a magistrate judge's order releasing a defendant. 18 U.S.C. § 3145(a). The district court may review the evidence before the magistrate judge or conduct its own evidentiary hearing. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). If the court finds by clear and convincing evidence that no "condition or combination of conditions will reasonably assure . . . the safety of any other person and the community," the Court "shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

In this case, there is a rebuttable presumption that no condition or combination of conditions will suffice because there is probable cause to believe that the defendant committed an offense involving a minor victim. *See* 18 U.S.C. § 3142(e)(3)(E).

2

**B.**     **The egregious nature of the offense, the ample evidence in this case, the defendant's lengthy pattern of engaging in this conduct, and the danger he poses to the community weigh strongly in favor of detention.**

<u>*Nature and circumstances of the offense.*</u> While the defendant is currently charged with transportation of child pornography, the affidavit reveals that his offense conduct is much more extensive. The transportation offense itself involves the distribution and receipt of child pornography with individuals that the defendant apparently sought out online for the purpose of discussing violent sexual fantasies about child abuse and exchanging CSAM. The defendant was a member of at least one community dedicated to the exchange of CSAM, and he actively contributed to the group. As a result, the defendant faces at least a five-year mandatory minimum.

Even more concerningly, the defendant has a history and pattern of engaging and trying to engage in sexual conduct and conversations with minors online. For example, a minor victim told law enforcement that the defendant pressured her to send pictures depicting sexually explicit conduct. Law enforcement found 11 images of this minor on the defendant's phone, including nude images with her breasts and pubic region exposed. Law enforcement also located a chat between the defendant and the minor in which he manipulated her by offering access to the public figure he knew she "love[d] most in the world." In other instances, the defendant concealed his identity while he engaged in these online exploits with minors. He even posed as an adolescent girl, using that persona to engage in sexual conversations with other young girls.

The defendant's interests in CSAM are broad. The evidence reveals a man interested in trading images depicting everything from the rape of infants, to the bondage and S&M treatment of prepubescent boys, to the sexual exploitation of late adolescents. His conduct spans multiple platforms and years. His devices contained conversations with minors on Snapchat, Instagram, and Omegle, among others. The evidence spans numerous devices and nearly a decade of time. The defendant had CSAM on his devices dating back to at least 2014, and electronic records indicated

he was saving CSAM onto his hard drive as recently as at least January 2022, just a few months before the search of his residence. These are deeply engrained—and criminal—habits that are not quickly or easily changed.

*Nature and seriousness of danger to the public.* It is well-established that victims of the exploitation that occurs during the production and trafficking of CSAM often bear profound burdens encompassing the original trauma and beyond—and that the suffering caused by this sexual abuse often continues for the rest of their lives. "Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note). Of course, the defendant did not just view—he distributed. As courts have regularly recognized, "[s]uch images are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (internal quotation marks omitted). These children, "who must live with the knowledge that adults like [the defendant] can pull out a picture or watch a video that has recorded the abuse of [them] at any time," "suffer a direct and primary emotional harm when another person possesses, receives or distributes the material." *United States v. Sherman*, 268 F.3d 539, 547-48 (7th Cir. 2001). In some cases, victims of CSAM trafficking are hounded by strangers even as adults; there is little prospect of an end to the torment.

*Weight of the evidence.* The weight of the evidence is overwhelming. The messages and images were located on devices found throughout the defendant's home—where he lived alone. The devices contained numerous indications that they belonged to him, including his personal accounts and data. They had been used to engage in illegal activities in close proximity to when he had used them for other business and personal affairs.

*History and characteristics.* At the hearing, defense counsel relied heavily on the defendant's standing in and contribution to the community. But he maintained that place in the community *while engaging* in both the trafficking of child sexual abuse material and exploiting and attempting to exploit minors online. He even messaged with his own family members in the same time periods he traded CSAM and engaged in sexual discussions with strangers on the internet. The defendant has proven capable of living a multi-faceted life, keeping the illegal conduct separate and hidden from the rest.

The defendant may also pose a danger to himself. When law enforcement searched his home, he told them that his life was over. He has quit his job and moved out of his home. Though the conditions imposed by the magistrate court restrict his access to his guns, he clearly has familiarity and comfort with firearms and knows where to obtain them. Based on the defendant's history and characteristics, he poses a significant danger to the community, including himself.

**C.   The defendant cannot rebut the presumption that no conditions can assure the safety of the community.**

Because the defendant's crimes have been committed online, the primary condition to police his behavior will be electronic monitoring. However, electronic monitoring has significant limitations. As an initial matter, it only works on devices known to pretrial services. Obtaining additional phones is cheap and easy, and nearly impossible for a third-party custodian to prevent or monitor. Moreover, electronic monitoring *detects* misbehavior, but does not *prevent* it before it happens. Once electronic monitoring identifies a problem—which necessarily occurs after the fact—the harm to the community, and to those minors, has already occurred.

The defendant's illegal conduct is pervasive, wide-ranging, and long-standing. The defendant has proven adept at concealing it from everyone in his life. The government respectfully requests that the Court revoke the order of release and detain the defendant pending trial.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
      Zoe Bedell
      Assistant United States Attorney
      Whitney Kramer
      Special Assistant United States Attorney (LT)
      United States Attorney's Office
      2100 Jamieson Ave.
      Alexandria, Virginia 22314
      Phone: 703-299-3700
      Email: Zoe.Bedell@usdoj.gov